OPINION
{¶ 1} Appellant, William Miller, appeals the November 1, 2001 judgment entry of the Lake County Court of Common Pleas.
 {¶ 2} Appellant was indicted on June 8, 2001, with one count of possession of cocaine, in violation of R.C. 2925.11, and one count of trafficking in cocaine, in violation of R.C. 2925.03(A)(2), both of which are felonies of the first degree. Appellant waived his right to be present at the arraignment and entered a plea of not guilty to the charges. Thereafter, on August 20, 2001, appellant filed a motion to suppress. A hearing was held on August 30, 2001.
 {¶ 3} Officer Jeffrey R. Bilicic ("Officer Bilicic") of the Kirkland Hills Police Department was on duty on March 31, 2001. He was running radar and sitting stationary on Interstate 90. Officer Bilicic revealed that he observed a vehicle that did not have a front license plate. He explained that once he "pulled out behind that vehicle [he] observed the vehicle was in the left-hand side lane. When [he] pulled out behind the vehicle, the vehicle changed lanes on the right-hand side lane without a turning signal." As a result, Officer Bilicic stated that he activated his overhead lights, but the car did not pull over and after about an eighth of a mile, the auto stopped.
 {¶ 4} Officer Bilicic related that he approached the vehicle on the passenger's side and asked the driver, who was later identified as appellant, for his license. He smelled a moderate odor of marijuana emanating from the car. He also "observed a couple marijuana seeds and loose marijuana, very, very small amounts on the passenger's seat of the vehicle." Officer Bilicic explained that he recognized the marijuana through his training. As a result, he asked appellant to exit the car and indicated that he wanted to talk to appellant about the odor of marijuana from the auto. Appellant told Officer Bilicic that the smell was in the automobile "because his cousin was smoking in the vehicle the night before." Officer Bilicic then asked appellant if he had any drugs on him or in the car. Officer Bilicic revealed that "[e]very time [he] would ask [appellant] a question [appellant] would look down at his right pocket and [Officer Bilicic] noticed his pocket — he had a bulge in his pocket ***."
 {¶ 5} Patrolman James J. Povejsil ("Patrolman Povejsil") of the Kirkland Hills Police Department, who served as backup for Officer Bilicic, was present when Officer Bilicic inquired as to what was in appellant's pant pocket, and appellant replied that it was crack. Officer Bilicic questioned appellant regarding how much crack cocaine he had, and appellant told him "about an ounce." Officer Bilicic never asked appellant if he had any weapons on his person. In fact, Officer Bilicic testified that the bulge did not look like a weapon, it looked like he had a handkerchief in his pocket. Officer Bilicic then requested that appellant take out the contents from his pocket. Appellant removed the contents, and Officer Bilicic stated that he observed "five individually wrapped small — well, not small, but whitish substances *** in each bag." At that point, Officer Bilicic patted appellant down, searched him, and placed him in the rear of the police cruiser.
 {¶ 6} Officer Bilicic "went up to the back of the car and looked at the back seat *** [and] could see, like, a pipe, the mouthpiece of a pipe sticking out from beneath this plastic bag that was on the back seat." He "opened the door, *** reached [his] hands in and grabbed the pipe out of the back seat." Appellant was placed under arrest for possession of drug paraphernalia. After appellant was Mirandized, he divulged that the pipe belonged to his cousin, but he did not supply his cousin's name. Appellant's vehicle was towed, and Patrolman Povejsil performed an inventory of it. The car was registered to someone other than appellant.
 {¶ 7} Following the hearing, the trial court denied appellant's motion to suppress. Subsequently, on September 24, 2001, appellant entered a written plea of guilty to a lesser included offense of possession of cocaine, a felony of the second degree. The other count in the indictment was dismissed upon motion of the state, and the matter was set for sentencing. On November 1, 2001, the trial court sentenced appellant to a prison term of five years, with forty-two days of credit for time already served. Further, appellant's driver's license was suspended for five years. It is from that entry that appellant filed the instant appeal and now assigns the following as error:
 {¶ 8} "[1.] The warrantless search of [appellant] and his vehicle was an unlawful investigatory stop and search which violated his constitutional rights against an unreasonable search and seizure.
 {¶ 9} "[2.] [Appellant's] arrest was constitutionally invalid.
 {¶ 10} "[3.] The search of appellant and his vehicle was not consensual or voluntary.
 {¶ 11} "[4.] The denial of the motion to suppress [appellant's] statements was a violation of his Fifth Amendment right against self-incrimination.
 {¶ 12} "[5.] [Appellant's] counsel rendered ineffective assistance of counsel in violation of appellant's Sixth Amendment rights to effective assistance of counsel.
 {¶ 13} The Supreme Court of Ohio has held that a guilty plea by a criminal defendant may constitute a waiver of all constitutional infirmities that occur before the submission of the guilty plea. State v. Spates (1992), 64 Ohio St.3d 269, 271. A plea of guilty, therefore, effectively waives all constitutional infirmities that may have occurred prior to the submission of the guilty plea, unless such infirmities are shown to have precluded the defendant from knowingly and voluntarily entering into his or her plea pursuant to Crim. R. 11. See, e.g., State v. Kelley (1991), 57 Ohio St.3d 127, 130.
 {¶ 14} Likewise, "a defendant's plea of guilty entered into knowingly, intelligently and voluntarily after a preliminary hearing waives defendant's right to challenge a claimed deprivation of the constitutional right to counsel at the preliminary hearing stage of a criminal proceeding." Spates, 64 Ohio St.3d at 273. In so holding, the Ohio Supreme Court followed Tollet v. Henderson (1973), 411 U.S. 258, in which the United States Supreme Court held that:
 {¶ 15} "[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea ***." Id. at 267.
 {¶ 16} Under the first assignment of error, appellant argues that the search of him and his person were unlawful and violated his right against unreasonable search and seizure. For the second assignment of error, appellant argues that his arrest was constitutionally invalid. In the third assignment of error, appellant claims that the trial court erred in searching him and his vehicle because the search was not consensual or voluntary. In the fourth assignment of error, appellant asserts that denial of his motion to suppress was a denial of his Fifth Amendment right of self-incrimination. Under his final assignment of error, appellant contends that he was denied effective assistance of counsel.
 {¶ 17} In the instant matter, appellant entered a plea of guilty to the charges. Thus, he waived all of his constitutional arguments and all of the arguments dealing with constitutional issues. Therefore, appellant's guilty plea waives the errors he assigns. We further note that appellant did not present an assignment of error to the effect that his plea was not knowingly or voluntarily entered.
 {¶ 18} For the foregoing reasons, appellant's assignments of error are not well-taken. Therefore, the judgment of the Lake County Court of Common Pleas is affirmed.
JUDITH A. CHRISTLEY and DIANE V. GRENDELL, JJ., concur.